UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **JEFFREY DUNLAP,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO.  1:17-cv-4550 ) |
| **OMNISOURCE CORPORATION,** | ) ) |
| Defendant. | ) ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  NATURE OF THE CASE**

1. Plaintiff, Jeffrey Dunlap ("Dunlap"), by counsel, brings this action against Defendant, Omnisource Corporation ("Defendant") alleging a breach of contract as well as violations of the Americans with Disabilities Act of 1990 (hereinafter "ADA"), as amended, 42 U.S.C. § 12101 *et. seq.*, Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et. seq.*

**II.  PARTIES**

2. Dunlap is a resident of Marion County in the State of Indiana, who at all times relevant to this action resided within the geographical boundaries of the Southern District of Indiana.

3. Defendant maintains offices and conducts business within the geographical boundaries of the Southern District of Indiana.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367; 42 U.S.C. § 1211, 29 U.S.C. § 626 and 42 U.S.C. §2000e-5(f)(3).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A), 29 U.S.C. § 630(b) and 42 U.S.C. §2000e(b).

6. Dunlap was an "employee" as that term is defined by 42 U.S.C. § 12111(4), 29 U.S.C. § 630(f) and 42 U.S.C. §2000e(f).

7. Dunlap satisfied his obligation to exhaust his administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against Defendant alleging discrimination based on disability, race and age. Dunlap received his Notice of Suit Rights and timely files this action.

8. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Southern District of Indiana; thus, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

9. Dunlap was hired by Defendant on or about July 2007 as an Industrial Marketing Representative.

10. Dunlap reported to Tim Miles, Marketing Manager. At all relevant times, Dunlap met or exceeded Defendant's legitimate performance expectations.

11. On or about April 13, 2017, Miles informed Dunlap that he had been selected for a "random" drug test and that he needed to report to Human Resources.

In his nearly ten years of employment, Dunlap had never been asked to submit to a drug test.

12.     Dunlap is a diabetic and, therefore, suffers from a disability as that term is defined by the Americans with Disabilities Act.  As a result of his disability, Dunlap consumes more water and urinates more frequently than the average person.

13.     The result of Dunlap's April 13, 2017 urinalysis was reported as diluted due to his water intake.  Dunlap requested to see the test results; however, Defendant refused to provide them to him.

14.     Thereafter, Defendant required that Dunlap provide a second test using a hair sample.  Dunlap was unable to provide a sample from the hair on his head, because of its short nature.  Dunlap offered to do another urinalysis or a swab test; however, Defendant refused. Instead, the lab tested an underarm hair.

15.     On April 21, 2017, Dunlap was informed that his test came back positive for marijuana; however, Dunlap had not used marijuana.

16.     Dunlap called the Medical Review Officer (MRO) at the Lab, US Healthworks, and spoke to the doctor who wrote the testing procedure, Dr. Donald Bucklin. Dr. Bucklin told Dunlap that it was a bad sample because it was taken from under his arm.  The test is supposed to detect drug use within 90 days; however, according to the doctor, underarm hair for older Caucasian men is sparse and the sample could detect usage that occurred ten or more years ago.   In any event, the MRO confirmed that it was a bad test and that he would relay the same to

Defendant. Andrew Ables, Defendant's Human Resource Director, acknowledged to Dunlap that Bucklin had shared that information with him, but suggested that Bucklin should not have shared it with Dunlap. Bucklin also suggested that there were several alternative tests that could have been utilized to produce reliable results.

17.     Dunlap is Caucasian and was born in 1959.  He was 58 years old at the time of his hair follicle test.

18.     Nevertheless, Defendant terminated Dunlap's employment on or about April 24, 2017.

19.     Dunlap used Defendant's internal appeal process.  As part of the appeal, Dunlap provided a negative drug test result from April 11, 2017, two days before the original test – that was conducted during a routine visit to his physician related to his disability.  In addition, Dunlap provided a negative drug test result from April 25, 2017, the day after his termination.  He again requested the results from the hair follicle test, but Defendant would not provide them to him.

20.     On or about May 3, 2017, Defendant informed Dunlap that his appeal was denied.

21.      Dunlap and Defendant entered into an Employment Agreement on or about July 9, 2007.  See Exhibit A.  The Employment Agreement that outlines the reasons that Dunlap's employment may be terminated for cause; the circumstances described above were not cause under the Employment Agreement to terminate Dunlap's employment.

22. The Employment Agreement allows Defendant to terminate Dunlap's employment without cause; however, in the event of a termination without cause, the Defendant was obligated to pay Dunlap three months of his regular compensation.

23. Defendant terminated Dunlap's employment without cause and failed to pay him three months of his regular compensation in violation of the Employment Agreement.

## V.  CAUSES OF ACTION

### COUNT I: DISABILITY DISCRIMINATION

24. Dunlap hereby incorporates paragraphs one (1) through twenty-three (23) of his Complaint.

25. Defendant discriminated against Dunlap and terminated his employment on the basis of his disability.

26. Defendant's intentional and willful actions were taken in reckless disregard for Dunlap's rights as protected by the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12112(b)(4).

27. Dunlap has suffered damages as a result of Defendant's unlawful actions.

### COUNT II:  VIOLATION OF TITLE VII – RACE DISCRIMINATION

28. Dunlap hereby incorporates paragraphs one (1) through twenty-seven (27) of his Complaint.

29. Dunlap's employment was terminated based on a drug test that was

known to be flawed when administered to Caucasian individuals.

30. Defendant's actions were intentional, willful and in reckless disregard of Dunlap's rights as protected by Title VII of the Civil Rights Act of 1964.

31. Dunlap suffered damages as a result of Defendant's unlawful actions.

### COUNT III: VIOLATION OF THE ADEA

32. Paragraphs one (1) through thirty-one (31) of Dunlap's Complaint are hereby incorporated.

33. Dunlap's employment was terminated based on a drug test that was known to be flawed when administered to individuals over the age of forty.

34. Defendant willfully and intentionally discriminated against Dunlap on the basis of his age in violation of the ADEA.

35. Dunlap has suffered damages as a result of Defendant unlawful actions.

### COUNT IV: BREACH OF CONTRACT

36. Dunlap hereby incorporates all of the foregoing paragraphs of his complaint.

37. Dunlap and Defendant had a valid and enforceable written contract for employment, which is evidenced and attached hereto as Exhibit A.

38. Defendant breached the employment agreement by failing to pay him three months of his regular compensation when it terminated the agreement without cause.

39. Dunlap suffered damages as a result of Defendant's unlawful actions.

## VI. R<small>EQUESTED</small> R<small>ELIEF</small>

WHEREFORE, Plaintiff, Jeffrey Dunlap, respectfully requests that this Court enter judgment in his favor and award him the following relief:

1. Reinstate Dunlap to the position, salary, and seniority level he would have enjoyed but for Defendant's unlawful actions; and/or payment to Dunlap of front pay in lieu thereof;

2. All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Compensatory damages Defendant's violations of the ADA, Title VII and Indiana law;

5. Punitive damages for Defendant's violations of the ADA, Title VII and Indiana law;

6. Liquidated damages for Defendant's violations of the ADEA;

7. All damages and compensation due to Dunlap under the Employment Agreement;

8. All costs and attorney's fees incurred as a result of bringing this action;

9. Pre- and post-judgment interest on all sums recoverable; and

10. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty. No. 23551-49
411 Main Street
Evansville, IN 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

Attorneys for Plaintiff, Jeffrey Dunlap

## **DEMAND FOR JURY TRIAL**

Plaintiff, Jeffrey Dunlap, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Atty. No. 23551-49
411 Main Street
Evansville, IN 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

Attorneys for Plaintiff, Jeffrey Dunlap